SO ORDERED.

SIGNED this 20th day of June, 2025.



_____
Mitchell L. Herren
United States Bankruptcy Judge
_____

Designated for online publication only
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br><br>Justin Thomas Dodd<br>Brianna Ingeborg Dodd,<br><br>　　　　　　　　Debtors. | Case No. 24-11276<br>Chapter 7 |
| Patricia Hamilton, Chapter 7 Trustee,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>Charles Thomas Dodd et al.,<br><br>　　　　　　　　Defendants. | Adv. No. 25-5028 |

**Memorandum and Order Granting in Part**
<u>**Trustee's Motion for Immediate Possession of Real Property**</u>

　　The complaint in this adversary proceeding by Plaintiff Patricia Hamilton,

Chapter 7 Trustee, states two claims: (1) a claim for turnover of real property in

Chanute, Kansas, under 11 U.S.C. § 542, and (2) a claim for recovery of past due rent and damages related to the use of that real property. After Defendant Charles Dodd filed a pro se answer to the complaint, the Trustee filed a "Motion for Immediate Possession" of the real property,[1] and the Court held an evidentiary hearing on the motion. The Court grants the Trustee's motion with the limitations stated herein. Mr. Dodd must permit access to the real property at issue within seven days of the date of this Order so the Trustee and/or her agents may inspect the real property for the purposes of attempting to insure it.

I. Findings of Fact[2]

Debtors Justin and Brianna Dodd filed a Chapter 7 bankruptcy petition on December 17, 2024. On their Schedule A filed with their petition, Debtors disclosed an ownership interest in real property located at 26 S. Denman, in Chanute, Kansas.[3] Mr. Dodd, who is the father of Debtor Justin Dodd, resides in this real property. Debtors did not claim an exemption in the real property on their Schedule C. Mr. Dodd was not listed as a creditor of Debtors or given notice of Debtors' petition.

Two days later, however, on December 19, 2024, the Trustee sent a demand letter to Mr. Dodd, advising him of the filing of the bankruptcy case and indicating

---

[1] Doc. 11.

[2] The Court takes judicial notice of the docket in the bankruptcy case and the docket of this adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[A] court may . . . take judicial notice, whether requested or not (Fed. Rules Evid. Rule 201) of its own records and files.").

[3] Debtors valued the real property at $36,000.

2

the bankruptcy estate's interest in the real property and her duty to administer the bankruptcy estate. The Trustee requested proof of insurance on the real property and her desire to arrange a date for inspection of that property, as well as requesting payment of rent for the real property. The Trustee received no response to the December 19, 2024, demand letter.

On February 13, 2025, the Trustee sent a second demand letter to Mr. Dodd, again explaining her duty to take possession of the real property and liquidate the same for the benefit of the bankruptcy estate and terminating any tenancy rights Mr. Dodd may have had in the real property under state law. The February 13, 2025, demand letter indicated Mr. Dodd, or someone on his behalf, had contacted the Debtors about the matter, and requested further communication be to the Trustee. Again, the Trustee received no response to the February 13, 2025, demand letter.

On February 27, 2025, the Trustee filed a Pre-Eviction Notice in Debtor's bankruptcy case, giving notice to Mr. Dodd that any leasehold rights held in the real property were terminated as of March 31, 2025, and if he did not vacate the property by that date, the Trustee would initiate an adversary complaint seeking eviction.[4] On March 3, 2025, the Trustee filed a certificate of service evidencing that the Pre-Eviction Notice was served on Mr. Dodd on February 28, 2025.[5]

---

[4] Case No. 24-11276, Doc. 25.

[5] *Id.* Doc. 26.

On March 26, 2025, the Trustee initiated this adversary proceeding by filing her complaint, as indicated above. Mr. Dodd was served with the complaint and filed a pro se answer to the complaint, generally alleging the real property is his home and he has put money into the home via improvements. Mr. Dodd also alleges he gave Debtors money ($30,000) in prior years which he may be alleging was used to purchase the real property.

On May 30, 2025, the Trustee filed a "Motion for Immediate Possession" of the real property.[6] In her motion, the Trustee contends the real property is uninsured and because she does not have possession of the real property she is unable to obtain insurance for it. The Trustee also contends Mr. Dodd is also unable to obtain insurance, as he is not the owner of the real property and does not hold an insurable interest in anything other than, at most, his personal property at the location.

The Trustee asked for Court authorization for her to take "immediate possession" of the real property so she could obtain insurance to protect its value.[7] The Court set the Trustee's motion for hearing on June 17, 2025.[8] Mr. Dodd received notice of the hearing.[9] On June 10, 2025, the Trustee issued a subpoena for

---

[6] Doc. 11.

[7] *Id.* p. 3.

[8] Doc. 12.

[9] Doc. 13.

4

Mr. Dodd to appear at the June 17, 2025, hearing, and tendered the witness and mileage fee for the same.[10]

Mr. Dodd did not appear at the hearing. The Trustee confirmed the subpoena for Mr. Dodd's appearance was delivered to Mr. Dodd's address by FedEx. The Trustee reported she also mailed the subpoena to Mr. Dodd, emailed the subpoena and hearing information to Mr. Dodd, and called Mr. Dodd, leaving him a voice message with the pertinent details. The Trustee then presented the following via Exhibits and testimony:

- A General Warranty Deed, conveying the real property at issue from Larry and Evelyn Hockett to Debtors as joint tenants, on March 31, 2021. The General Warranty Deed was recorded with the Neosho County Register of Deeds on April 1, 2021.[11]

- A Closing Statement, dated March 31, 2021, for the sale of the real property at issue, signed by Debtors as Buyers.[12]

- An Owners' Policy of Title Insurance, dated May 6, 2021, indicating fee simple title vested in Debtors.[13]

- A copy of a handwritten note from one of the Debtors, dated August 1, 2021, authorizing Mr. Dodd to put utilities for the real property in Mr. Dodd's name.[14]

- A Neosho County Valuation notice concerning the real property, dated March 1, 2024, indicating an appraised value of $36,110.[15] The Trustee indicated she engaged a local realtor to view the real property and confirm Mr. Dodd

---

[10] Doc. 15.

[11] Trustee Exh. 2.

[12] Trustee Exh. 3.

[13] Trustee Exh. 4.

[14] Trustee Exh. 5.

[15] Trustee Exh. 6.

- remains in the property, and the real property has no visible exterior damage.

- An Informational Title Report, dated December 13, 2024, again indicating fee simple title is held by Debtors.[16] The Informational Title Report also indicates a small amount of real property taxes due on the property for 2023 and 2024.[17] The Informational Title Report also reflects a judgment lien on the real property, stemming from a Neosho County state court case against Debtors.

- A copy of the docket sheet from a 2021 Neosho County criminal case by the State of Kansas against Mr. Dodd, wherein Mr. Dodd is charged with certain drug offenses. This was accepted by the Court for the limited purpose of supporting the Trustee's claim about more information being needed about the condition of, and activities in, the house for insurance purposes, as explained below.

Based on the above, the Court concludes the current record[18] shows Debtors' have legal title to the real property at issue, the real property is property of Debtors' bankruptcy estate, and there is equity in the real property for the Trustee to administer.

Despite ample notice of the filing of Debtors' bankruptcy case and the adversary proceeding concerning the real property, other than filing his pro se answer to the Trustee's complaint, Mr. Dodd has not appeared or participated in this dispute. He has not filed a claim in Debtors' case, has not responded to the Trustee's demand letters or notices, did not appear at the hearing on the Trustee's

---

[16] Trustee Exh. 7.

[17] The Trustee reported Debtors paid the real property taxes in 2021 and 2022.

[18] "A hearing for preliminary injunction is generally a restricted proceeding, often conducted under pressured time constraints, on limited evidence and expedited briefing schedules. The Federal Rules of Evidence do not apply to preliminary injunction hearings." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). The Court makes the findings of fact herein solely for the limited purpose of this Order.

6

motion or file any opposition to the Trustee's motion, and did not comply with the subpoena commanding his appearance at the Court's hearing.

The Trustee indicated her insurance company will not insure the real property unless she can complete an inspection of the inside of the real property and also confirm there is no current drug activity occurring at the real property. Debtors have apparently never insured the real property. The Trustee believes Mr. Dodd has no insurance on it either, as he has no insurable interest beyond potential renter's insurance.

The Trustee confirmed she is seeking partial injunctive relief on Count 1 of her complaint, asking for an order requiring Mr. Dodd to permit inspection of the real property. The Trustee also asks for an order from this Court requiring Mr. Dodd to confirm there is no drug activity occurring at the real property.

## II. Conclusions of Law

At the hearing the Trustee confirmed she is seeking relief under Fed. R. Civ. P. 65, governing injunctions and restraining orders.[19] This is a core matter under 28

---

[19] Fed. R. Civ. P. 65 is applicable in adversary proceedings via Fed. R. Bankr. P. 7065. The typical requirement of security found in Fed. R. Civ. P. 65(c) does not, however, apply. *See* Fed. R. Bankr. P. 7065 ("on application of a debtor, trustee, or debtor in possession, the court may issue a temporary restraining order or preliminary injunction without complying with subdivision (c) of that rule").

7

U.S.C. § 157(b)(2)(E) ("orders to turn over property of the estate"), over which this Court may exercise subject matter jurisdiction.[20] Venue is proper in this District.[21]

To establish a claim for turnover, the Trustee has the burden to "establish a prima facie case that the property sought is property of the estate."[22] The movant, here the Trustee, also has burden to establish the factors necessary to obtain a preliminary injunction.[23]

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule."[24] A preliminary injunction may be granted only if the moving party establishes: (1) it "will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the movant will eventually prevail on the merits."[25]

There are certain requested injunctions that must meet a heightened standard, as "courts 'disfavor' some preliminary injunctions and so require more of

---

[20] 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(G), and Amended Order of Reference, D. Kan. S.O. 13-1. *See also Braunstein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009) ("[A] court issuing a turnover order has the power to order injunctive relief to allow the trustee to gather the property of the estate.").

[21] 28 U.S.C. § 1409(a).

[22] *In re Rosales*, 621 B.R. 903, 916 (Bankr. D. Kan. 2020).

[23] *Heideman*, 348 F.3d at 1188–89 ("It is the movant's burden to establish that each of these factors tips in his or her favor.").

[24] *United States v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888 (10th Cir. 1989).

[25] *In re Aimtree Co.*, 202 B.R. 154, 156–57 (D. Kan. 1996).

8

the parties who request them."[26] "Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial. Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win. To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors."[27] On these two factors, the Trustee "must make a 'strong showing' that these tilt in her favor."[28]

The Court addresses each preliminary injunction factor in turn. First, regarding irreparable injury, the Tenth Circuit has stated:

> To constitute irreparable harm, an injury must be certain, great, actual and not theoretical. Irreparable harm is not harm that is merely serious or substantial. The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. It is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages.[29]

Here, the Trustee's complaint seeks turnover of the real property and recovery of past due rent from Mr. Dodd. The Trustee has proffered evidence to show the bankruptcy estate has an interest in the real property at issue, and there is value in that real property to administer for the estate. The Trustee has a fiduciary duty to

---

[26] *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019).

[27] *Id.*

[28] *Id.*

[29] *Heideman*, 348 F.3d at 1189 (internal quotations and citations omitted).

protect and administer estate assets.[30] The real property is uninsured, and the Trustee cannot execute her duty to protect that real property until she can inspect the property and obtain insurance. The Trustee has been informed by the insurance company that it cannot and will not insure the property until the Trustee is able to inspect it, and therefore waiting until a decision on the merits of this case would come too late.[31] The Trustee has shown irreparable harm: without insurance, there could be a full and complete loss of the real property for the estate.

Second, regarding the balance of harms, while Mr. Dodd did not participate in the hearing to argue his position, based on the minimal relief the Trustee is currently requesting, the Court discerns little harm to him. As noted, if the Trustee cannot obtain insurance and there is a loss, then the harm to the estate would be irreparable. By the end of the hearing, the only relief the Trustee was seeking is inspection so she can attempt to obtain insurance. Permitting inspection of real property is not unduly burdensome. The bankruptcy estate will pay the cost of insurance. There should be minimal impact to Mr. Dodd. The Trustee has met her

---

[30] A trustee has fiduciary duties, *see Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 354, 356 (1985) (addressing trustee statutory and fiduciary duties), and must be "accountable for all property received," 11 U.S.C. § 704(a)(2).

[31] *See, e.g.*, *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) ("In determining whether a plaintiff has made the requisite showing, we further assess whether such harm is likely to occur before the district court rules on the merits. If a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief." (internal quotations and citations omitted)).

burden to show the threatened injury to the bankruptcy estate she represents "outweighs the injury to the other party."[32]

Third, the public interest is best served by protecting real property for the benefit of a bankruptcy estate and its creditors. An injunction permitting inspection to obtain insurance would not be "against the public interest."[33]

Finally, as noted above, because the Trustee seeks to disturb the status quo with her requested relief, and affirmative action is required in response, she must "make a strong showing" that her "claim is substantially likely to succeed on the merits."[34] The Court concludes the Trustee made this showing at the hearing on her motion. The Trustee provided the Court with the legal documents showing Debtors' fee simple interest in the real property at issue. Debtors obtained that fee simple interest prepetition and continued to have that interest as of the Trustee's postpetition Informational Title Report. The real property has equity that could be administered in the bankruptcy estate. The Court concludes the Trustee has made a strong showing she is likely to succeed on Count 1 of her complaint, asking for turnover of the real property.

---

[32] *Heideman*, 348 F.3d at 1190 ("To be entitled to a preliminary injunction, the movant has the burden of showing that the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction." (internal quotation omitted)).

[33] *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (stating the public interest factor requires that the injunction not be against the public interest).

[34] *Free the Nipple-Ft. Collins*, 916 F.3d at 798.

The Court concludes the Trustee has met her burden to establish the four factors for a preliminary injunction and has made a "strong showing" regarding the likelihood-of-success-on-the-merits factor and the balance-of-harms factor.

## III. Conclusion

The Trustee's motion is granted, in part. The Trustee's motion broadly asks for "immediate possession," although her motion then limits that broad request by asking for "immediate possession" so that she "may obtain property insurance and protect the value" of the real property.[35] The Trustee confirmed at the hearing on her motion she seeks only the right to inspect the property so she may obtain insurance. The Court grants that limited relief and requires Mr. Dodd to permit access to the Trustee or her agents within seven days of the date of this Order, so the Trustee and/or her agents may inspect the real property for the purposes of obtaining insurance. Mr. Dodd is already subject to a potential finding of contempt of court for his failure to appear at the hearing, pursuant to subpoena. A failure to comply with this Court's Order allowing inspection could subject Mr. Dodd to further risk of a finding of contempt of court, along with financial or other sanctions for non-compliance.

At the hearing the Trustee also asked for an Order from this Court that Mr. Dodd verify there is no current drug activity on the real property. The Court took judicial notice of the Trustee's printout of a state court criminal case against Mr. Dodd from 2021 that charged him with certain drug offenses. Based on the

---

[35] Doc. 11 p. 2.

Trustee's Exhibit, that criminal action remains pending. The Court declines to grant the Trustee's request. The Trustee may inspect the real property and after her inspection will be able to indicate her findings to the insurance company, who the Trustee says requested the verification. The parties to this adversary proceeding are free to discuss this topic, but the Court declines to force such a conversation.

Finally, the scheduling conference previously set for June 18, 2025, has been continued to 11:00 a.m. on July 16, 2025. The Trustee reports she provided Mr. Dodd with a proposed Report of Parties Planning Meeting and has received no response. Mr. Dodd is reminded of his duty, even as party without an attorney in this matter, to comply with all Federal Rules and the Local Rules of this Court. If the Trustee has received no response from Mr. Dodd by June 30, 2025, to her draft Report of Parties Planning meeting, she may submit her proposed dates for the Court's review. The Court will then issue a Scheduling Order. As is its customary practice, the Court encourages any unrepresented party such as Mr. Dodd to make every effort to obtain legal representation.

**It is so Ordered.**

###